Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIDGET BRADLEY, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> ALL-PRO BAIL BONDS INC., a California corporation, <br><br> *Defendant.* | Case No. 3:22-cv-1819 <br><br> **CLASS ACTION COMPLAINT** <br><br> **(1) VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.* |

Plaintiff Bridget Bradley, individually and on behalf of a proposed class, brings this Class Action Complaint against Defendant All-Pro Bail Bonds Inc., seeking monetary restitution, declaratory relief, an injunction, and other appropriate relief from All-Pro's unenforceable and unlawful credit bail agreements. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief.

## PARTIES

1. Plaintiff Bridget Bradley is a natural person and a citizen of the State of California. She resides in San Francisco, California.

2. Defendant All-Pro Bail Bonds Inc. is incorporated in the State of California. Its headquarters is in Vista, California. It regularly transacts business throughout the State,

including in this District, with offices in San Francisco, Oakland, Martinez, Redwood City, San Jose, and beyond. It operates as a bail bond agent in California.

## JURISDICTION AND VENUE

3. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the proposed class is a citizen of a state different from Defendant, and/or a citizen or subject of a foreign state, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

4. The Court has personal jurisdiction over Defendant because Defendant regularly transacts business in this District and committed wrongful acts alleged in the complaint in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in and emanated from this District.

## DIVISIONAL ASSIGNMENT

6. Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

## GENERAL ALLEGATIONS

I. **How Cash Bail Works in California**

7. When a person in California is arrested and accused of a crime, the court must decide whether to permit their release from detention pending trial. When release is appropriate, it is usually accomplished through cash bail. The court sets a bail amount which, if posted, entitles the individual to release on the condition that they return to court for proceedings. If the individual returns for proceedings as required, then the posted bail amount is returned to them when proceedings are completed. If they fail to do so, they forfeit the posted bail.

8. Bail amounts set by courts in California are routinely set beyond the financial means of most people who face charges. In March 2021, the California Supreme Court ruled that it violated the state constitution to "condition[] freedom solely on whether an arrestee can afford bail." *In re Humphrey*, 11 Cal. 5th 135, 143 (2021). The court cited a report finding that

"[t]he median bail amount in California ($50,000) is *more than five times* the median amount in the rest of the nation (less than $10,000)." *Id.* at 148 (emphasis in original). Because of the high cost, most people have no choice but to work with commercial bail bond companies if they want to be released from jail pending trial.

9. Bail bond companies post bail with the court in exchange for the payment of a non-refundable "premium." The premium is commonly calculated as 10% of the total bail amount. Surety companies underwrite these bail bonds, and bail bond agents coordinate the transactions with the accused, the sureties, and the courts. For example, if a court sets bail at $100,000, a surety working with a bail agent will underwrite the full bail amount with the court in exchange for a $10,000 (10%) non-refundable premium payment.

10. Most people caught in these circumstances do not have the ability to pay $10,000 out of pocket. By way of example, according to the Federal Reserve, in 2019, half of American families had less than $5,300 in cash savings.

11. To secure sales, then, many bail bond agents—including All-Pro—accept payment of the required premium through a credit transaction. Take the hypothetical $10,000 premium on the $100,000 bail discussed above. In this scenario, the bail bond company might agree to post bail in exchange for a smaller "down" payment (such as $1,000) with the $9,000 balance becoming a debt to be paid off later.

12. In other words, the bail bond agent offers credit services to consumers by financing the bail bond premium. These arrangements are consumer loans subject to the requirements of California Civil Code Sections 1799.90, *et seq*.

## II. All-Pro Does Not Comply with California Law for Consumer Credit Loans

13. When All-Pro offers credit bail financing services in connection with a bail bond transaction, it generally requires at least one friend or family member of the accused to co-sign the loan. The co-signer is purportedly put on the hook not just for the cost of the bail bond premium (*i.e.*, the $10,000 discussed above), but also the amount of any forfeited cash bail (*i.e.*, the full $100,000 bail, if the accused fails to appear), as well as any costs related to enforcement.

14. All-Pro generally requires accused individuals and their co-signers to sign five

documents to process bail: a "Bail Agreement Form," a "Conditions of Surety Bail Bond Form," a "Surety Bail Bond Indemnity Agreement," a "Bail Bonds Co-Signer Application," and a "Promissory Note for Surety Bail Bond" (collectively, the "Credit Agreements").

15. All-Pro's goal is to make each co-signer fully responsible for repayment of the consumer loan through which the bail bond premium is financed. Thereafter, All-Pro regularly follows up with co-signers to ask them to pay off the balance of the loan.

16. However, All-Pro previously did not, and today does not always, provide co-signers with the legally required notice—which is described in detail later in this Complaint—that informs them of their rights and the consequences of signing before asking them to co-sign the aforementioned agreements.[1] This failure renders the agreements invalid and unenforceable against co-signers.

## FACTS SPECIFIC TO PLAINTIFF BRIDGET BRADLEY

17. On January 29, 2019, All-Pro asked Ms. Bradley to co-sign a consumer loan financing a bail bond premium of $5,250 to enable her nephew's father to be released from jail pending trial, requiring a "down payment" of $1,250 on January 29, 2019 with the balance to be paid under a payment schedule.

18. At no time before asking Ms. Bradley to sign the Credit Agreements did All-Pro provide her with the legal notice required by California Civil Code Section 1799.91, which, as depicted below, would have made clear that there were significant legal and financial ramifications for Ms. Bradley if she co-signed the loan but thereafter failed to make all the required payments. Instead, All-Pro put Ms. Bradley under the impression that her signature was merely needed to process her nephew's father's release from jail, not that doing so would create an ongoing set of financial obligations and liabilities for her.

---

[1] Upon information and belief, at some time in 2021 (to be confirmed in discovery), All-Pro began to sometimes provide the required notices. However, upon information and belief, All-Pro still does not provide the required notices to all consumers asked to co-sign a consumer credit loan.

19. California Civil Code Section 1799.91 requires that, "[u]nless the persons are married to each other, each creditor who obtains the signature of more than one person on a consumer credit contract shall deliver to each person who does not in fact receive any of the money, property, or services which are the subject matter of the consumer credit contract, prior to that person's becoming obligated on the consumer credit contract, a notice in English and Spanish in at least 10-point font as follows:

**NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley)**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required By Law)**

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

20. The notice required by Section 1799.91 (the "1799.91 Notice") makes clear the following information, which would be material to a reasonable consumer:

    a. The bail bond credit arrangement is a legal debt.

    b. The co-signer will be liable for the debt if the arrestee does not pay.

    c. The co-signer may be liable for collection fees and other late fees if the arrestee

          does not pay.

    d. The creditor may ask the co-signer to make payments without first asking the arrestee to do so.

    e. The creditor can sue the co-signer, or garnish their wages, to enforce the debt obligation.

    f. The bail bond credit arrangement may affect the co-signer's credit record.

21. Ms. Bradley would not have agreed to cosign the loan or provide payments under the Credit Agreements if All-Pro had provided her with the notice required by California Civil Code Section 1799.91 explaining to her the true consequences of cosigning the agreements.

22. Indeed, after Ms. Bradley signed the Credit Agreements, All-Pro representatives frequently and repeatedly called her to demand that she make additional payments, without advising her that the Credit Agreements were in fact unenforceable. At All-Pro's request, and without being advised of her rights, Ms. Bradley made thousands of dollars of additional payments pursuant to the Credit Agreements.

23. Because All-Pro failed to provide the 1799.91 Notice to Ms. Bradley or other proposed Class Members before asking them to co-sign the Credit Agreements, those agreements are unlawful and unenforceable, and the sums that All-Pro collected pursuant to the agreements were collected unlawfully. *See* Cal. Civ. Code § 1799.95 ("No action shall be brought, nor shall any security interest be enforced, by any creditor or any assignee of a creditor on any consumer credit contract which fails to comply with this title against any person, however designated, who is entitled to notice under Section 1799.91 and who does not in fact receive any of the money, property or services which are the subject matter of the consumer credit contract.").

24. Consequently, Ms. Bradley and the proposed Class Members are entitled to a refund of all payments they made to All-Pro pursuant to the Credit Agreements, a declaration that the Credit Agreements are invalid and unenforceable, and an injunction prohibiting All-Pro from seeking to demand or collect payments from any proposed Class Member pursuant to the Credit Agreements.

# CLASS ALLEGATIONS

25. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All people who cosigned a bail bond credit agreement from All-Pro Bail Bonds Inc., which did not include the notice described in California Civil Code Section 1799.91, and who (1) owed, were asked to make, or made a payment on or after March 23, 2018; and (2) were not a spouse of the person who received release services under the arrangement at the time of cosigning.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

26. **Numerosity**: On information and belief, the proposed Class definition includes thousands of people. Members of the Class can be identified through Defendant's records.

27. **Commonality and Predominance**: There are many questions of law and fact common to Plaintiff's and the Class's claims, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the Credit Agreements described above constitute consumer credit contracts under California Civil Code Section 1799.90;

   b. Whether Defendant failed to provide Plaintiff and the proposed Class Members with the notice required by California Civil Code Section 1799.91 prior to having them sign the Credit Agreements;

   c. Whether the aforementioned failure constituted an unlawful, unfair, or fraudulent business act or practice within the meaning of California's Unfair

Competition Law, California Business & Professions Code Sections 17200, *et seq.*;

   d. Whether Plaintiff and the proposed Class Members suffered injury in fact and lost money or property as a result of Defendant's unlawful conduct within the meaning of California Business & Professions Code Section 17204;

   e. Whether Defendant was unjustly enriched by retaining the amounts received from Plaintiff and Class Members under the Credit Agreements;

   f. Whether Plaintiff and the proposed Class Members are entitled to restitution and injunctive relief, *see* California Business & Professions Code Section 17203;

   g. Whether Plaintiff and the proposed Class Members are entitled to refunds of all amounts collected from them pursuant to unlawful and unenforceable co-signer agreements, and the amount of such refunds;

   h. Whether Plaintiff and the proposed Class Members are entitled to disgorgement of ill-gotten profits from Defendant, in an amount not exceeding their out-of-pocket losses; and,

   i. Whether Plaintiff and the proposed Class Members are entitled to a declaration that the co-signer agreements are unlawful and unenforceable, and injunctive relief prohibiting Defendant from seeking to collect from them on those agreements.

28. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class were harmed, and face ongoing harm, arising out of Defendant's wrongful conduct.

29. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class, as Plaintiff and each member of the Class lost money because of Defendant's unlawful conduct. Plaintiff also has no interests antagonistic to those of the Class,

and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

30. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. The policies that Plaintiff challenges apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same.

31. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendant's wrongful conduct. Absent a class action, it would be difficult for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

32. Plaintiff reserves the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

# COUNT I
## Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL)
### Unlawful Business Practices

33. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34. Defendant's Credit Agreements, described above, constitute "consumer credit contracts" under California Civil Code Section 1799.90(a). The Credit Agreements create an obligation to pay money on a deferred basis; the money, property, services, or other consideration that are the subject matter of the contract, is primarily for personal, family, or household purposes; they are loans or extensions of credit secured by other than real property, or unsecured, for use primarily for personal, family, or household purposes; and they are retail installment contracts.

35. Defendant did not provide Plaintiff or the Class Members with the notice required by California Civil Code Section 1799.91 at any time prior to signing or enforcing the Credit Agreements. Consequently, the Credit Agreements are invalid and unenforceable pursuant to California Civil Code Section 1799.95.

36. Plaintiff and the proposed Class Members have suffered injury in fact and have lost money or property as a result of Defendant's allegedly unlawful conduct, including the sums collected by Defendant from Plaintiff and the proposed Class Members pursuant to the unlawful contracts.

37. California's Unfair Competition Law ("UCL"), Business & Professions Code Section 17203, specifically authorizes this Court to issue equitable relief in the form of restitution and an injunction to redress past acts and to enjoin ongoing acts of unfair competition and unlawful conduct. Plaintiff and the proposed Class Members have no adequate remedy at law.

38. Plaintiff and the proposed Class Members seek restitution in the form of refunds of the amounts unlawfully collected, and the disgorgement of Defendant's ill-gotten profits, not exceeding their out-of-pocket losses.

39. Plaintiff, on behalf of herself and the Class, seeks a declaration holding those Credit Agreements invalid and unenforceable under California Civil Code Section 1799.95, and an order from the Court requiring Defendant to return all payments made on unenforceable

Credit Agreements to the Class and enjoining Defendant from collecting on or enforcing any of the unlawful Credit Agreements against Plaintiff or the Class.

## **PRAYER FOR RELIEF**

Plaintiff Bridget Bradley, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Bridget Bradley as a representative of the Class, and appointing her counsel as Class Counsel;

b) Declaring that Defendant's conduct, as set out above, is unlawful under the UCL and California Civil Code Section 1799.91;

c) Declaring that the Credit Agreements are invalid and unenforceable under California Civil Code Section 1799.95;

d) Enjoining Defendant from seeking to collect on, or to enforce, the Credit Agreements against Plaintiff or the Class;

e) Enjoining Defendant from continuing the challenged conduct;

f) Awarding restitution to Plaintiff and Class Members in an amount to be determined at trial;

g) Requiring disgorgement of all of Defendant's ill-gotten gains, not exceeding Plaintiff and Class Members' out-of-pocket losses;

h) Awarding reasonable attorney's fees and expenses;

i) Awarding pre- and post-judgment interest, to the extent allowable;

j) Requiring injunctive and/or declaratory relief as necessary to protect the interests of Plaintiff and the Class; and

k) Awarding such other and further relief as equity and justice require, including all forms of relief provided for under the UCL.

Dated: March 23, 2022

Respectfully submitted,

**BRIDGET BRADLEY**, individually and on behalf of all others similarly situated,

By: */s/ Yaman Salahi*
　　　Yaman Salahi

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300 / Fax: 415.373.9435

*Counsel for Plaintiff Bridget Bradley and the Proposed Class*